**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSE FELICIANO, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-4713 |
| THOMAS DOHMAN, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

RONALD L. BUCKWALTER, S.J.                                                  March 25, 2013

Currently pending before the Court is a Motion to Dismiss Plaintiff's Complaint by

Defendants Thomas Dohman, William Radle, Patrick Curran, David DiGuglielmo, and Michael

Lorenzo (collectively "Defendants"). For the following reasons, the Motion is granted in part

and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Pennsylvania Correctional System. According to the facts set

forth in the Complaint, Plaintiff's problems began when he filed an administrative grievance and

lodged a sexual harassment claim against School Counselor Theresa Snyder. (Compl. p. 9.)

Shortly thereafter, on December 31, 2008, Plaintiff attended his afternoon call out for the law

library. (Id. ¶ 1.) While awaiting the opening of the law library, Plaintiff was approached by two

security officers, patted down, handcuffed, and escorted to the Security Department. (Id. ¶ 2.)

Once at the Security Department, he was taken into the Security Captain's office, where Captain

Thomas Dohman and Lieutenant William F. Radle were waiting for him. (Id. ¶ 3.) Captain

Dohman asked Plaintiff to "tell him about the stuff," to which Plaintiff responded that he did not know what he was talking about. (Id. ¶ 4.) Captain Dohman then began screaming at Plaintiff stating, "I know she's bringing you that shit! Just tell me she's bringing it in!" (Id.) When Plaintiff again asked Dohman what he was talking about, Dohman said, "look, just tell me she is bringing you drugs and we will let you stay in this institution (Graterford) and you could go back to your housing unit. . . . If you don't cooperate, then I'm sending you far away. . . . Tell me Officer Ballard is bringing you drugs, that is all I want you to say." (Id. ¶ 5.)

At that point, Lieutenant Radle joined in and stated, "You will be far away from you family, José. We know they come to visit you, and if you don't tell us what we want you to say, you will never hug your kids again or see your family in a very long time." (Id. ¶ 6.) Plaintiff then told both officers that, "I can't tell you about something that isn't true. . . . What you want me to say is a lie and I will not lie about or on Mrs. Ballard." (Id. ¶ 7.) Dohman, however, remarked that he knew Plaintiff was having a relationship with Ballard and commented, "What, you think I just fell off a turnip truck." (Id. ¶ 8.) When Plaintiff again refused to cooperate, Dohman indicated that he had Plaintiff on tape and began to remove video cassette tapes from a shelf above his desk. (Id. ¶ 9.) Plaintiff stated his belief that this was being done because he filed a complaint against Mrs. Snyder, and Lieutenant Radle responded that, "Then just do what we are asking of you and you could stay here at Graterford. You could work for us and not have to worry about getting transferred." (Id. ¶ 10.)

Upon his further refusal to cooperate, Plaintiff was handcuffed again and escorted to the Restricted Housing Unit ("RHU") where he received a DC-141, Part 1 "Other Report," placing him on Administrative Custody ("AC") status. (Id. ¶ 11.) He received his first Program Review

Committee ("PRC") hearing on February 6, 2009, at which time he was continued on AC status, under investigation, and pending transfer. (Id. ¶ 12.) At no point was Plaintiff given a chance to speak and/or deny the allegations made against him. (Id.) Plaintiff appealed the decision rendered by the PRC, which was referred back to the Committee for another hearing. (Id. ¶ 13.). The second PRC hearing was held on March 4, 2009, at which Deputy Murray, Defendant Deputy Lorenzo, and Mr. Alinski were present. (Id. ¶ 14.) At that time, Plaintiff claimed that the actions were being taken against him because he refused to lie about Officer Ballard, and he denied all allegations that he ever had a relationship with Officer Ballard or that she brought him drugs/contraband. (Id. ¶15.) Nonetheless, Plaintiff was continued on AC status and informed that he would be transferred per the request of Captain Dohman. (Id. ¶ 16.)

Again in March 2009, Plaintiff was escorted to the Security Department from the RHA, where Lieutenant Radle asked Plaintiff to "cooperate" with him and commented that, "If you just say that Officer Ballard brought you in some drugs, I could make this all go away and I will help stop your transfer." (Id. ¶ 17.) Plaintiff repeated, however, that he had no knowledge of any drugs or contraband being brought into the institution by Ballard or anyone else and would not cooperate in lying. (Id.)

On March 9, 2009, Plaintiff wrote to Superintendent David DiGuglielmo, appealing the decision of the PRC Committee, denying the allegations made by Captain Dohman, and expressing that the actions taken by Dohman were a result of Plaintiff's refusal to cooperate with fabricating a story against Officer Ballard. (Id. ¶ 18.) This appeal was answered by Deputy Lorenzo, who stated that it "was within Dohman's parameters of his position to try and 'cultivate' informants." (Id. ¶ 19.) As such, on April 3, 2009, Plaintiff submitted a grievance for

filing by handing it to the section officer, to be placed in the out-going mail bag.  (Id. ¶ 20.)  This grievance challenged the reasons for Plaintiff's placement on AC status and the retaliatory actions taken by Captain Dohman and Lieutenant Radle.  (Id.)  During his placement in the RHU, however, Plaintiff received a notice from the State Superior Court in which his appeal was denied and which informed him of his time for seeking allowance of appeal with the Pennsylvania Supreme Court.  (Id. ¶ 21.)

After submitting several request slips to prison officials pleading to have access to his legal property, Plaintiff filed a grievance, dated April 2, 2009, by handing said grievance to another inmate so that the inmate could send Plaintiff's grievance to the grievance coordinator. (Id. ¶ 22.)  On April 8, 2009, Plaintiff was finally escorted to the property room, where he was only allowed to go through several personal property boxes, but was not allowed to organize his legal materials to locate the documents necessary to perfect his allowance.  (Id. ¶ 23.)  In addition, it was obvious that his property had been searched.  (Id.)  Plaintiff's April grievance was then answered with a date of April 2, 2009, suggesting it had never been reviewed by the assigned grievance coordinator, Wendy Shaylor, since Plaintiff had submitted it on that same date.  (Id. ¶ 24.)    Accordingly, Plaintiff immediately appealed.  (Id.)  On April 13, 2009, Plaintiff sent a letter to Ms. Shaylor inquiring about his grievance challenging his AC placement. (Id. ¶ 25.)  When Plaintiff received no confirmation from Ms. Shaylor, he submitted a second letter to her on April 27, 2009, again challenging his AC confinement, inquiring about the status of his grievance, and asking if his two previous letters were received.  (Id. ¶ 26.)

During the pendency of his appeal challenging his denial of access to the courts, Plaintiff was transferred to S.C.I. Greene.  (Id. ¶ 27.)  He was continued on AC status because of his

falsified records and was denied access to his legal and personal property. (Id. ¶ 28.) On June

12, 2009, after not receiving an answer from Superintendent DiGuglielmo, Plaintiff submitted his

second letter inquiring into the status of his appeal challenging the denial of access to the Courts.

(Id. ¶ 29.) Subsequently, on July 15, 2009, Plaintiff sent another letter, but this time to Dorina

Varner, Chief Grievance Coordinator, requesting confirmation as to whether his grievance

challenging his AC confinement and retaliation claim was received by said office. (Id. ¶ 30.)

Shortly thereafter, Plaintiff received a response from Defendant DiGuglielmo, pertaining to his

first grievance challenging his denial of access to his legal property and access to the courts. (Id.

¶ 31.) On July 22, 2009, Plaintiff then filed his appeal for Final Review, challenging denial of

access to his legal property and denial of access to courts. (Id. ¶ 32.)

Plaintiff was released to the general population at S.C.I. Greene on August 6, 2009, yet

his legal and personal property continued to be withheld. (Id. ¶ 33.) On August 12, 2009,

Plaintiff received a response from Dorina Varner in a Notice of "Action Required," stating that

Plaintiff's appeal had exceeded the two-page limit. (Id. ¶ 34.) Therefore, Plaintiff submitted his

revised version of the appeal on August 20, 2009 to the Secretary's Office of Inmate Grievance

and Appeals. (Id. ¶ 35.) He then sent a letter to the same office, on October 5, 2009, inquiring as

to the status of that revised version. (Id. ¶ 36.) Having received no response as of November 11,

2010, Plaintiff submitted another letter to Ms. Varner regarding the status of his grievance. (Id. ¶

37.) He followed up with letters to Ms. Varner on March 10, 2011, Jeffrey Beards, the Secretary

of Corrections on June 20, 2011, and to Ms. Varner again on October 5, 2011. (Id. ¶¶ 38–40.)

Finally, on November 1, 2011, Plaintiff received a response from Ms. Varner's office in which

Plaintiff was informed that her office never received Plaintiff's grievance or prior

correspondence.  (Id. ¶ 41.)

On August 29, 2012, Plaintiff initiated the instant action under 42 U.S.C. § 1983, alleging violations of his First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution.  Plaintiff also claimed that all Defendants are personally involved and are liable in both their individual and official capacities.  (Id. ¶¶ 50–57.)  Defendants filed the present Motion to Dismiss on October 29, 2012 and Plaintiff responded on February 11, 2013.  The Motion is now ripe for judicial review.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

**A.**     **Whether the Eleventh Amendment Bars the § 1983 Claims Against the Commonwealth Defendants in their Official Capacities**

Defendants' first argument contends that, to the extent Plaintiff sues them in their official capacities for damages, the Eleventh Amendment bars the claims. The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The United States Supreme Court has noted that the Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that, as a sovereign, it is not amenable to the suit of an individual without its consent. Seminole Tribe of Fl. v. Fl., 517 U.S. 44, 54 (1996). The type of relief sought is irrelevant—the Eleventh Amendment bars an action regardless of whether the plaintiff seeks legal or equitable relief. Id. at 58. The Eleventh Amendment also extends immunity to suits for retrospective monetary relief against state officials in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169–70 (1985). This is because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

In the present matter, Plaintiff's Complaint sues all Defendants in both their official and individual capacities under 42 U.S.C. § 1983. Via his Opposition to the Motion to Dismiss, however, Plaintiff concedes that the Eleventh Amendment bars suit against such Defendants in their official capacities, but maintains that suit against them in their individual capacities is proper. Accordingly, the Court grants this portion of Defendants' Motion and dismisses claims against all Defendants in their official capacities.

**B.      Whether the Statute of Limitations Bars Plaintiff's Initial Complaint**

Defendants next argue that Plaintiff's claims of retaliation are barred by the applicable statute of limitations.  Specifically, they aver that Plaintiff's Fifth Amendment retaliation claim accrued on December 31, 2008, when Defendants Dohman and Radle placed him in Administrative Custody and began the inmate transfer procedure.  (Compl. ¶ 10.)  Plaintiff was not released to the general population at S.C.I. Greene until August 6, 2009.  (Id. ¶ 33.) Moreover, Defendants claim that Plaintiff's First Amendment retaliation claim accrued on April 3, 2009, when he tried to file his grievance related to being placed in administrative custody.  (Id. ¶ 20.)  Finally, Defendants contend that Plaintiff's access to courts claim accrued sometime between December 2008 and August 6, 2009, while he was in administrative custody.  (Id. ¶ 21.) Ultimately, they reason that the latest possible date of accrual was in August 2009, yet Plaintiff did not commence this action until August 29, 2012, well over three years after this latest possible accrual date.  Because the applicable period of limitations is two years, Defendants assert that the statutory period expired, making the Complaint against them untimely.

A defendant may prevail on the statute of limitations at the motion to dismiss stage "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). Actions brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations applicable to personal injury claims in the state in which the claim arises, without regard for the facts upon which the claim is based or the nature of the injury sustained.  Owens v. Okure, 488 U.S. 235, 249–250 (1989).  The statute of limitations for personal injury actions in Pennsylvania—where

9

the present cause of action arose—is two years.  See 42 Pa. Cons. Stat. § 5524; see also Ormsby

v. Luzerne Cnty. Dept. of Public Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir.

2005).  "A cause of action accrues when the plaintiff knows or has reason to know of the injury

that constitutes the basis of the cause of action."  Id.

Notably, however, in the context of a § 1983 suit brought by a prisoner, the Prison

Litigation Reform Act ("PLRA") requires prisoners to present their claims through an

administrative grievance process before seeking redress in federal court.  42 U.S.C. § 1997e(a).

A prisoner must comply with the PLRA exhaustion requirement with respect to any claim arising

in a prison setting, regardless of the nature of the claim or the relief sought.  Porter v. Nussle, 534

U.S. 516, 532 (2002); Ballard v. Williams, No. Civ.A.10-1456, 2010 WL 7809047, at *5 (M.D.

Dec. 9, 2010).  Although the United States Court of Appeals for the Third Circuit has not yet

spoken on this issue, it has recognized that "several courts of appeals have concluded that,

because exhaustion is mandatory under the PLRA, the statute of limitations applicable to § 1983

actions must be tolled while a prisoner exhausts."  Shakuur v. Costello, 230 F. App'x 199, 201

(3d Cir. 2007) (citing Brown v. Valoff, 422 F.3d 926, 942–43 (9th Cir. 2005); Johnson v. Rivera,

272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Harris

v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999)); see also Adderly v. Ferrier, 419 F. App'x 135,

137 (3d Cir. 2011).  Similarly, a number of district courts within the Third Circuit have

concluded that the statute of limitations applicable to § 1983 is tolled while an inmate exhausts

his or her administrative remedies under the PLRA.  Miscovitch v. Judge, No. Civ.A.09-2699,

2012 WL 1521071, at *2 (E.D. Pa. April 30, 2012); Beckett v. Dept. of Corr., No. Civ.A.10-

0050, 2010 WL 5092973, at *3–4 (M.D. Pa. Dec. 8, 2010); Ballard, 2010 WL 7809047, at *5 ;

Ozoroski v. Maue, No. Civ.A.08-0082, 2009 WL 414272, at *7 (M.D. Pa. Feb. 18, 2009); Carter v. Pa. Dep't of Corr., No. Civ.A.08-279, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008); Cooper v. Beard, No. Civ.A.06-171, 2006 WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006). "These cases all recognize a fundamental truth: Having mandated administrative exhaustion of inmate grievances as a prerequisite to bringing an action in federal court, principles of equity now require us to toll the statute of limitations while inmates complete this mandatory exhaustion process." Ballard, 2010 WL 7809047, at *5.

In the present case, Plaintiff's Complaint alleges, in some detail, the efforts he undertook to exhaust his administrative remedies regarding both (a) his placement in administrative custody in purported retaliation for his failure to cooperate with the guards and (b) his denial of access to his legal materials. Although the allegations do not clearly and concisely indicate the progress of each of his grievances through the administrative system and when final administrative denials occurred, two fundamental legal tenets require this Court to deem such allegations sufficient to foreclose dismissal under the statute of limitations. First, it is well-established that courts must construe complaints 'so as to do substantial justice,' with the added principle that pro se complaints, in particular, should be construed liberally. Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)); Amberg-Blyskal v. Transp. Sec. Admin., 832 F. Supp. 2d 445, 447 (E.D. Pa. 2011). Moreover, as noted above, "[a] complaint may not be dismissed under Rule 12(b)(6) as untimely under the relevant statute of limitations unless it is plain from the face of the complaint that it was not timely filed." Hunt v. Pa. Dept. of Corr., 174 F. App'x 679, 681 (3d Cir. 2006) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)). While the Complaint, in this case, does not plainly indicate when, or

even if, Plaintiff fully exhausted his administrative remedies with respect to either of his grievances, the allegations of the Complaint, liberally construed, demonstrate that Plaintiff was in regular contact with prison offices regarding his grievances well into late 2011 to early 2012. (Compl. ¶¶ 27–41.)  Taking these allegations as true and liberally construing them to properly plead exhaustion,[1] Plaintiff's statute of limitations did not begin running until early 2012—the date he fully exhausted administrative remedies.  He filed the current litigation less than one year later.  More plainly stated, untimeliness is *not* obvious from the face of the Complaint. Accordingly, at this juncture, the Court denies Defendants' statute of limitations argument.

### C.  Whether Plaintiff Failed to Properly Plead Personal Involvement by Defendant DiGuglielmo and Lorenzo

Defendants next contend that Plaintiff has not stated a viable claim for damages under § 1983 against Defendants DiGuglielmo and Lorenzo.  Specifically, Defendants note that the sole allegation against Defendant DiGuglielmo is that he "had full knowledge of defendants Dohman's, Radle's, Curan's and Lorenzo's conduct, and was in position to correct the customs and practice by said Defendants, but failed to do so."  (Compl. ¶ 52.)  The sole allegation against Defendant Lorenzo asserts that he "also had knowledge of all Defendant's customs and practice of noncompliance with well established Policies and failed to correct their acts."  (Id. ¶ 54.) Defendants now contend that Plaintiff's claims must fail because the Complaint is devoid of allegations showing any personal involvement by Defendants DiGuglielmo or Lorenzo.

The United States Supreme Court has emphasized that "[i]n a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory

---

[1]  Notably, Defendants' Motion does not suggest that Plaintiff failed to exhaust his administrative remedies.

liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Iqbal</u>, 556 U.S. at 676. "When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an 'affirmative part' in the complained-of misconduct." <u>Rogers v. U.S.</u>, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (citing <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986)). While a supervisor may not encourage constitutional violations, that supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1120 (3d Cir. 1990) (quotations omitted). The supervisor must be personally involved in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Id.</u> "[S]uch assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were 'the moving force' behind the harm suffered by the plaintiff." <u>Fennell v. Rodgers</u>, 762 F. Supp. 2d 727, 733 (D. Del. 2011), <u>aff'd</u>, 436 F. App'x 53 (3d Cir. 2011). The Third Circuit has explained that there are two theories of supervisory liability in a section 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinates'

13

violations.  Santiago v. Warminster Twp., 629 F.3d 121, 128–29 & n.4 (3d Cir. 2010).

In the present case, while the Court has some hesitation in allowing the claims against Defendants Diguglielmo and Lorenzo to proceed, we find that Plaintiff has properly alleged supervisory liability.  His asserts that he wrote to Superintendent DiGuglielmo, appealing the decision of the PRC Committee, and that the appeal was answered by Deputy Lorenzo who stated that it "was within Dohman's parameters of his position to try and 'cultivate' informants." (Compl. ¶¶ 18–19.)  Plaintiff later challenged his denial of access to courts to Superintendent DiGuglielmo, who did not respond.  (Id. ¶ 29.)  Ultimately, he notes that both DiGuglielmo and Lorenzo had knowledge of all Defendants' customs, conduct, and practice, but failed to correct their acts.  (Id. ¶¶ 52, 54.)  Subsequently, in his Response in Opposition to the Motion to Dismiss, Plaintiff argues that "each Defendant was informed directly, either in writing and/or verbally by Plaintiff of the need to obtain the Plaintiff's legal property and 'scheme' by Defendants Dohman and Radle.  Defendants had ample opportunity to rectify the wrong committed by Defendants Dohman and Radle, but failed to do so, by 'turning their heads the other way.'" (Pl.'s Resp. Opp'n Mot. Dismiss 13.)  Although these allegations stand on tenuous grounds in terms of pleading that the two Defendants were the "moving force" behind the harm suffered, when read in the light most favorable to Plaintiff, they create a reasonable inference that DiGuglielmo and Lorenzo were clearly informed of the various constitutional violations being inflicted upon Plaintiff, yet chose to acquiesce in their subordinates' violations.  For purposes of a Rule 12(b)(6) Motion to Dismiss—particularly one involving a pro se Plaintiff—the Court errs in favor of allowing such claims to proceed.

D.    **Whether Plaintiff States a First Amendment Retaliation Claim**

14

Defendants next challenge Plaintiff's First Amendment retaliation claim.  To advance

such a claim:

> [A] plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action
> sufficient to deter a person of ordinary firmness from exercising his constitutional
> rights, and (3) a causal link between the constitutionally protected conduct and the
> retaliatory action.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  "[T]he key
> question in determining whether a cognizable First Amendment claim has been stated
> is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary
> firmness from exercising his First Amendment rights.'"  McKee v. Hart, 436 F.3d
> 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.
> 2000)); see also Crawford–El v. Britton, 523 U.S. 574, 589 n.10 (1998) ("The reason
> why such retaliation offends the Constitution is that it threatens to inhibit exercise of
> the protected right.").

Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  With respect to the first

factor, "it is well settled that government actions, which standing alone do not violate the

Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire

to punish an individual for the exercise of a constitutional right."  Walker v. Campbell, No.

Civ.A.09-282, 2011 WL 6153104, at *3 (W.D. Pa. Oct. 31, 2011) (citing Allah v. Seiverling, 229

F.3d 220, 224–25 (3d Cir. 2000)).  The second element requires that the prisoner show he

suffered some "adverse action" at the hands of prison officials, which may include filing false

misconduct reports, transferring a prisoner to another prison or placing a prisoner in

administrative custody.  Walker, 2011 WL 6153104, at *4 (citing Mitchell v. Horn, 318 F.3d

523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah, 229 F.3d at

225)).  Finally, to establish a causal connection between retaliatory conduct and a protected

activity, a plaintiff may allege (1) an unusually suggestive temporal proximity between the

protected activity and the purported retaliatory action; (2) a pattern of antagonism coupled with

timing to establish a causal link; or (3) that evidence from the record as a whole supports an

inference of causation.  Schlegal v. Koteski, 307 F. App'x 657, 661–62 (3d Cir. 2009).

Defendants in this case challenge Plaintiff's showing under the causation element. Specifically, they claim that Plaintiff's First Amendment retaliation claim "seems to surround SCIG staff's refusal to mail a grievance he wanted to file and which was related to his commitment in administrative custody after being questioned by [Defendants] Dohman and Radle." (Defs.' Mem. Supp. Mot. Dismiss 8.)  Yet, Defendants contend that Plaintiff alleges only that *someone* in the Restricted Housing Unit failed to mail his grievance related to his being placed in AC status, without alleging who precisely failed to mail his grievance, thereby falling short of establishing a causal connection between the actions of Dohman and Radle with the loss of his grievance.

This Court's reading of Plaintiff's Complaint, however, reveals that his First Amendment claim is based only partially on the aforementioned conduct.  In the section of his Complaint entitled "Legal Claims," Plaintiff states that he asserts "a First Amendment retaliation claim for retaliation after exercising his right to file an Administrative grievance and lodging a Sexual Harassment claim against School Counselor, Theresa Snyder." (Compl. p. 9.)  After lodging that complaint, he began experiencing retaliation by Defendants Dohman and Radle.  (Id.; see also Pl's Opp. Resp. Mot. Dismiss 3.)  Thereafter, when he filed an institutional grievance, he was further retaliated against by "having his grievance taken and not placed in the institutional mail bag for delivery."  (Id.)

To that end, Plaintiff's Complaint alleges a plausible First Amendment retaliation claim. Under the first element, Plaintiff's constitutionally protected activity was the filing of a sexual

harassment claim against School Counselor, Theresa Snyder. (Id.) Second, Plaintiff has pled the adverse actions of being placed in the RHU, having his legal materials withheld, and having his grievance never be properly delivered—all of which demonstrate "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Finally, Plaintiff sets forth—albeit with some lack of clarity—sufficient allegations to support the third element of causation. He argues that shortly after he filed his sexual harassment claim against Snyder, he was called upon by Defendants Dohman and Radle to fabricate a story about another guard. When he would not cooperate, he was immediately placed in administrative custody. (Compl. pp. 9–11.) Subsequently, in an attempt to challenge this placement, Plaintiff submitted a grievance, which was never given to the correct grievance coordinators. (Id. ¶¶ 20, 24, 41.) Finally, Plaintiff expressly contends that "[t]he actions of all Defendants were motivated by Plaintiff's Constitutional[ly] protected conducted and Plaintiff would not have been retaliated against, but for the protected conduct." (Id. ¶ 49.) Read in conjunction and drawing all reasonable inferences from these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pled causation by showing an "unusually suggestive temporal proximity" between his filing of the original grievance and the alleged retaliatory conduct, coupled with a pattern of antagonism. While such allegations may ultimately not survive scrutiny under a summary judgment standard, the Court deems them adequate at this early stage of litigation to plead causation for purposes of a First Amendment retaliation cause of action. Accordingly, the Court declines to dismiss this claim.

**E.      Whether Plaintiff States a Retaliation Claim Related to the Fifth Amendment**

Defendants next challenge Plaintiff's Fifth Amendment retaliation claim.  Specifically, Plaintiff asserts that Defendants Dohman and Radle asked Plaintiff to cooperate in an internal investigation by making allegations that another officer, Ballard, was bringing him drugs. (Compl. ¶ 4–7, 10.)  Because he refused to cooperate and tell lies against Ballard, however, Plaintiff was allegedly retaliated against.  (Id. ¶ 11.)  Defendants now contend that Plaintiff's Fifth Amendment claim must fail on several grounds.

First, Defendants aver that Plaintiff has not alleged any action by a federal actor and because the Fifth Amendment only protects against federal government actors, not state actors, the claim must be dismissed.  The Court, however, rejects this argument under the more liberal pleading standards offered to pro se litigants.  The Fifth Amendment provides, *inter alia,* that no person "shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.  "The limitations of the [F]ifth [A]mendment[, however,] restrict only federal governmental action . . ."  Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state officials.  Leventry v. Watts, No. Civ.A.06–193, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); Kopchinski v. Green, No. 05–6695, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (finding that because defendants were state actors, plaintiff's Fifth Amendment claims could not survive summary judgment).  It is nonetheless well-established that the Fifth Amendment rights were made applicable to the states by the Fourteenth Amendment.  King v. Ridley Twp., No.

Civ.A.07-704, 2007 WL 2071871, at *2 (E.D. Pa. July 17, 2007). In this case, Plaintiff invokes the Fourteenth Amendment in his Complaint. (Compl. p. 17.) Moreover, as emphasized in his Response to the Motion to Dismiss, Plaintiff claims a violation of his rights under the Fifth and Fourteenth Amendments. (Pl.'s Resp. Opp'n Mot. Dismiss 11–12.) Accordingly, in an effort to avoid dismissing this claim on what appears to be a technicality, the Court construes Plaintiff's claim to allege a violation of his Fifth Amendment rights as applied to him under the Fourteenth Amendment.

Alternatively, Defendants contend that Plaintiff never alleges that he invoked Fifth Amendment protection or indicated that he was exercising his right against self-incrimination at any point during his confrontation with Defendants Dohman and Radle, meaning that his claim must fail. "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). To claim the privilege, a person must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." United States v. Doe, 465 U.S. 605, 614, n.13 (1984) (quoting Marchetti v. United States, 390 U.S. 39, 53 (1968)). "It is well established . . . that the Fifth Amendment privilege against self-incrimination is not self-executing and thus must be claimed when self-incrimination is threatened." United States v. Frierson, 945 F.2d 650, 660 (3d Cir. 1991); Jackson v. Dohman, No. Civ.A.11-6890, 2013 WL 775598, at *2 (E.D. Pa. Mar. 1, 2013). "This rule means that a person cannot ordinarily complain on Fifth Amendment privilege grounds to the use of information supplied by him or her

19

unless the privilege was asserted at the time the information was given." Frierson, 945 F.2d at 660.

Again, read liberally, the allegations of the Complaint can be construed to suggest Plaintiff's invocation of the Fifth Amendment. Repeatedly, Defendants Dohman and Radle asked Plaintiff to incriminate himself and Officer Ballard by stating that Ballard had been bringing him drugs and that the two were having an intimate relationship. (Compl. ¶¶ 4, 8, 10.) At every turn, Plaintiff alleges that he "refused to cooperate" and would not answer questions about Ballard's purported drug activity. (Id. ¶¶ 7, 9, 10, 11, 15, 17.) Although Plaintiff did not explicitly proclaim that he was not answering questions under his Fifth and Fourteenth Amendment rights, he was clearly not participating in an informal investigation "where the answers might incriminate him in future criminal proceedings."[2] Lefkowitz, 414 U.S. at 77.

---

[2] The Court finds Defendants' cited cases inapposite. First, they reference Knox v. Wainscott, No. Civ.A.03-1429, 2003 WL 21148973, at *8 (N.D. Ill. May 14, 2003), wherein the court found no cause of action for retaliation where plaintiff claimed the defendants "lashed out at him on account of his suspected involvement in [and refusal to cooperate in the investigation of] the loss or theft of an officer's keys and handcuffs." Id. There was no claim by plaintiff that his Fifth Amendment right not to incriminate himself had been violated. Id.

In Bennett v. Goord, No. Civ.A.03-6577, 2006 WL 2794421, at *12 (W.D.N.Y. Aug. 1, 2006), aff'd, ___ F. App'x ___ (3d Cir. 2008), the inmate-plaintiff claimed retaliation because he refused to become a "snitch" and the court found that was not a constitutionally protected activity. By contrast, in the present case, Plaintiff was not simply being asked to be a "snitch"—which would not invoke the Fifth Amendment—but was being asked to incriminate himself in criminal activity that also involved another correctional officer.

Finally, Barry v. Luzerne Cnty., 447 F. Supp. 2d 438, 448–49 (M.D. Pa. 206) involved a completely distinguishable factual scenario. In that case, a county correctional officer brought suit due to his suspension and demotion after a series of newspaper articles came out blaming the recent escape of an inmate on the plaintiff's failures. Id. at 441. The plaintiff would not cooperate in his employer's investigation of the prison escape without his lawyer present, invoking his First Amendment right to an attorney. Id. at 448. The court found that the prison's interest in the efficient administration of public services outweighed the plaintiff's interest in his counsel's presence during the internal investigation. Id. at 449. At no point did the Fifth

Accordingly, the Court finds that such allegations suffice to survive Rule 12(b)(6) dismissal.

Finally, Defendants argue that Plaintiff's Fifth Amendment claim fails because he has not alleged that the adverse action he suffered was caused by the exercise of that right. According to Defendants, Plaintiff does not suggest that either Dohman or Radle were aware that Plaintiff was exercising his right against self-incrimination. As a result, Plaintiff cannot properly allege that the invocation of his Fifth Amendment rights motivated any of their actions.

This argument, however, is belied by the allegations of the Complaint. Plaintiff expressly alleges that Defendant Dohman told Plaintiff that if Plaintiff did not say that Officer Ballard was bringing him drugs he was "sending [him] far away." (Compl. ¶ 5.) Radle expanded on that threat, indicating that, "You will be far away from your family, José. We know they come to visit you, and *if you don't tell us what we want you to say*, you will never hug your kids again or see our family in a very long time." (Id. ¶ 6 (emphasis added).) When Plaintiff suggested that this was being done to him because of his filing of a complaint against Mrs. Snyder, Radle stated, "Then just do what we are asking of you and you could stay here at Graterford. You could work for us and not have to worry about getting transferred." (Id. ¶ 10.) Upon Plaintiff's continued refusal to cooperate and answer questions, he was immediately handcuffed, was escorted to the Restricted Housing Unit, received a disciplinary report, and was placed on administrative custody status. (Id. ¶ 11.) Such allegations are more than sufficient to suggest that Dohman and Radle were retaliating against him as a direct result of his exercise of his right against self-

---

Amendment come into play, nor was there any question as to whether the plaintiff's refusal to incriminate himself was the cause for retaliation.

incrimination.  Accordingly, the Court declines to dismiss this claim.

### F.      Whether Plaintiff Properly Pleads an Access to Courts Claim

Finally, Defendants contest the viability of Plaintiff's access to courts claim.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.  The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided to inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.  "'[T]he touchstone . . . is meaningful access to the courts.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988) (quoting Bounds, 430 U.S. at 823) (internal quotation omitted)).  The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Id. at 349–50; Oliver v. Fauver, 118 F.3d 175, 177–78 (3d Cir.1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the

courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In the present case, Plaintiff fails to show actual injury. Although Plaintiff claims to have had delayed and limited access to his legal materials, which hampered his ability to organize them and locate the proper documents, Plaintiff does not indicate that these actions impeded his ability to file any grievances or appeals. (Compl. ¶ 23.) To the contrary, Plaintiff alleges that he was able to file many of his grievances and, in fact, received responses. (<u>Id.</u> ¶¶ 25–38.) Plaintiff's bald allegation that he suffered an "actual injury"—made in his Response to Defendants' Motion to Dismiss—does little to further his claim given the lack of any supporting factual allegation. As such pleading fails to state a plausible claim for relief, the Court grants the Motion to Dismiss this cause of action.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court must grant Defendants' Motion to Dismiss in part and deny it in part. Initially, the Court dismisses all § 1983 claims against the Commonwealth Defendants in their official capacities, as barred by the Eleventh Amendment to the Constitution. Moreover, the Court finds that Plaintiff's access to courts claim must fail due to Plaintiff's inability to plead actual injury. In all other respects, however, Plaintiff pleads plausible and cognizable claims for relief.[3] As such, the Court declines the Motion on those grounds. An appropriate Order follows.

---

[3] Plaintiff also raises a Eighth Amendment claim, which Defendants do not challenge in their Motion.